UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

    Theodore John Polczynski, Jr., and
    Diane Kathleen Polczynski,

        Debtors in Possession.

Case No. 13-29485-gmh

Chapter 11

**DEBTORS' CHAPTER 11 PLAN DATED JANUARY 21, 2014**

Theodore and Diane Polczynski ("Debtors"), Debtors-in-Possession, through the undersigned counsel, hereby submit to their creditors, as proponents, this Plan of Reorganization (the "Plan") pursuant to Section 1121, *et seq.,* of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the Plan and its implementation is found in the Disclosure Statement of even date herewith. The Plan should be read in conjunction with the Disclosure Statement. The Debtors urge creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

## ARTICLE I - DEFINITIONS

1.1    "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2    "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3    "Allowed Claim" means a Claim against the Debtors (a) which is listed in the Debtors' Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4    "Assets" means all property, real or personal, in which the Debtor(s) has/have an interest.

1.5 "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code; including, but not limited to actions under 11 U.S.C. §§ 542 – 550.

1.6 "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7 "Bankruptcy Code" means Title 11 of the United States Code.

1.8 "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Wisconsin, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9 "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10 "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtors. The Bar Date was October 17, 2013.

1.11 "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Wisconsin are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12 "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case No. 13-29485-gmh.

1.13 "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 "Claim" means a claim as defined in § 101(5) of the Code.

1.15 "Claimant" means a Person holding a Claim against the Debtors.

1.16 "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17 "Collateral" means any property or interest in property of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18 "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 "Confirmation Date" means the date of the Confirmation Order.

1.20 "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21 "Confirmation Order" means the entered order of the Bankruptcy Court confirming the Plan.

1.22 "Creditor" means the holder of a Claim.

1.23 "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 "Debtors" mean Theodore and Diane Polczynski.

1.25 "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtors in connection with this Plan, as may be modified from time to time.

1.26 "Disputed Claim" means a Claim -

(a) which is listed as disputed or contingent in the Debtors' Schedules as filed or as amended, or

(b) which is listed as disputed under any provision of this Plan, or

(c) for which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27 "Effective Date" means the first Business Day after the Confirmation Order becomes a Final Order.

1.28 "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29 "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtors, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30 "Estate" means the bankruptcy estate(s) of the Debtors. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31 "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor(s) was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtors.

1.32     "Final Decree" means the Final Order of the Bankruptcy Court that closes the Case.

1.33     "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34     "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35     "Lien" has the meaning set forth in §101(37) of the Code.

1.36     "Material Default" of the Debtors shall occur if (1) Debtors fail to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtors and Debtors' attorney a written notice of Debtors' default; and (3) Debtors fail within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.37     "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable, or Avoidance Actions.

1.38     "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.39     "Petition Date" means July 12, 2013, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtors.

1.40     "Plan" means this Plan, as it may be amended from time to time.

1.41     "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.42     "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.43     "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.44 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.45 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.46 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.47 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtors with the Bankruptcy Court and any amendments thereto.

1.48 "Secured Claim" means any Claim, debt, or demand against the Debtor(s) as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of setoff against any Property of the Debtor(s), but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.49 "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.50 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.51 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 Class A - Administrative Claims: Class A consists of Administrative Expense claims, including the administrative claims of professionals and the fees of the Office of the U.S. Trustee. All administrative expense claims shall be paid in full on the effective date of the plan.

2.2 Class B - Priority Tax Claims. This class includes the claims of the Internal Revenue Service and the Wisconsin Department of Revenue. The Debtors do not believe that there are any priority tax claims, and no priority tax claims have been filed. **The claims in this class are impaired.**

2.3 Class C - Priority (Non-Tax) Claims: Class C consists of Priority Claims under §507 other than Administrative Claims and Priority Tax Claims. **The claims in this class are not impaired.**

2.4     Class D - JOHNSON BANK Secured Claim:  Class D consists of the secured prepetition claim of Johnson Bank (Claim No. 6), in the amount of $1,384,316.67 as of the filing date, secured by a mortgage on the Debtors' Homestead real estate located at 6917 Hwy 83, Hartland, Wisconsin 53029 and by a bank account at Johnson Bank pursuant to the terms of the depository agreement and Section 506(a) of the Code.  **This class is impaired.**

2.5     Class E - TALMER BANK AND TRUST Secured Claim:  Class E consists of the secured prepetition claim of Talmer Bank and Trust for amount of $ 247,958.17 as of the filing date (Claim 10).  This claim is secured by a mortgage on property located at 1334 Riverview Drive, St. Germain, Wisconsin.  This claim was also secured by a mortgage on the Debtors' homestead.  The Debtors have filed an adversary proceeding to avoid the mortgage on their homestead property because there is no equity in the homestead property to which the lien may attach.  **This class is impaired.**

2.6     Class F - ALLY FINANCIAL Secured Claim ( on 2011 Chevrolet Silverado): Class F consists of the prepetition claim of Ally Financial (Claim No. 4) in the amount of $12,230.98 as of the filing date, secured by a lien on a 2011 Chevrolet Silverado.  **This class is not impaired.**

2.7     Class G - MARGARETE DANNENBERG AND RUTH KAMENZ. Class G consists of the secured claims of Margarete Dannenberg and Ruth Kamenz, relative to the balance owed on their vendors' interest in a land contract dated January 7, 2011, for real property located at 5919 Shelter Bay Trail, Boulder Junction, Wisconsin, formerly known as 9528 Fishtrap Lake Road.  These creditors have requested to receive separate payments relative to their percentage interests in the property.  Margarete Dannenberg owns a 3/4 vendor's interest in the land contract, and Ruth Kamenz owns a 1/4 vendor's interest in the said land contract.  **This class is impaired.**

2.8     Class H - General Unsecured Claims: Class H consists of all general unsecured claims against the estate.  **This class is impaired.**

2.9     Class I - VILAS COUNTY TREASURER: Class I consists of the secured claim of The Vilas County Treasurer for real estate taxes owed on the properties in Vilas County. The Claims of this creditor shall be unaffected by this Plan.  **This class is not impaired.**

### ARTICLE III– TREATMENT OF CLAIMS AND INTERESTS

3.1.    Class A - Administrative Expenses: Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtors on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan.  Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

The administrative claims which consist primarily of the professional fees as of the date of this Plan are estimated to be fully covered by the prepetition retainer. The Debtors are unaware of any other unpaid administrative expense claims. Within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the Effective Date, if not paid sooner. After confirmation, and until the case is closed, the Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). **This class is not entitled to vote on the Plan.**

3.2. <u>Class B - Priority Taxes</u>: This class includes the claims of the Internal Revenue Service and the Wisconsin Department of Revenue. The estimated amount of these claims is zero. In the event such a claim is allowed, all priority tax claims shall be paid in full, with interest at the statutory rate on such claims, in equal quarterly cash payments commencing 90 days after the Effective Date, amortized over the remaining period of 5 years from the Petition Date, unless a different treatment is agreed to or provided for in the Plan. **This class is impaired.**

3.3 <u>Class C - Priority (Non-Tax) Claims</u>: The Debtors are unaware of any such claims, and no proofs of claim in this class have been filed. In the unlikely event that there are any allowed Claims in Class A, they shall be paid in full, in cash, by the Debtors on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. **This class is not impaired.**

3.4. <u>Class D - JOHNSON BANK Secured Claim</u>: Class D consists of the secured prepetition claim of Johnson Bank, in the amount of $1,384.316.67 as of the filing date per the claim filed by Johnson Bank, secured by a first mortgage lien on the Debtors' homestead property and by a lien on a bank account at Johnson Bank (Claim No. 6). Since the filing of the case, the Debtors have been paying the monthly amount of $6,708.79 to this creditor, which is the amount of the monthly payment that would be called for under the terms of the original note. The monthly adequate protection payments consist of principal payment of approximately $2,637.57, interest of approximately $2,929.04, and escrow of $1,144.18. The obligation to this creditor is restructured under this Plan. Principal and Interest will be rolled into a new principal balance of $1,384,316.67, less the amount of $2,637.57 per month for each post-petition adequate protection payment until the Effective Date, which will aggregate approximately $21,100.56 in claim reduction for a new principal balance of approximately $1,363,216.11. Such new principal balance shall be paid in equal monthly payments over a 30 year term, with interest at the rate of 4.00%, along with an escrow for real estate taxes in the amount as provided by RESPA. The new estimated monthly payment will be approximately $6,508.20 plus an escrow payment of approximately $1,144.18 for a total estimated monthly payment of $7,652.38. (The payment will be $1,384,316.67 less the amount of principal reduction through the effective date (approximately $21,100.56), amortized at 4.00% over 30 years plus an escrow for real estate taxes). (The debtors have also been communicating with Johnson Bank concerning a mortgage modification. To the extent that the parties are able to negotiate a mutually acceptable modification, then the modification will replace this provision.) **This class is impaired.**

3.5. <u>Class E - TALMER BANK AND TRUST Secured Claim (on real property located at 1334 Riverview Drive, St. Germain, Wisconsin)</u>: Class E consists of the secured claim of Talmer Bank and Trust pursuant to a note dated August 4, 2010, in the original stated amount of $250,000.00 and a current balance of approximately $247,958.17 secured by a

mortgage on property located at Riverview Drive, St. Germain, Wisconsin (Claim No. 10). The claim of Talmer Bank and Trust shall be restructured to pay the allowed amount of the claim, along with interest at the rate of 4.50%, amortized over 20 years, with a balloon payment for the balance owed on the seventh anniversary of the Effective Date. The monthly payment will be $1,568.71 for 83 months, with a final balloon payment for the balance owed at the 84th month. Upon the entry of a discharge, the mortgage of Talmer Bank and Trust on the homestead property of the Debtors shall be deemed to be satisfied, and Talmer Bank and Trust shall provide the Debtors with a satisfaction of mortgage in a form that can be recorded with the Register of Deeds to satisfy the homestead mortgage. **This class is impaired.**

       3.6.   <u>Class F - ALLY FINANCIAL Secured Claim ( on 2011 Chevrolet Silverado)</u>: Class D consists of the secured prepetition claim of Ally Financial, (Claim No. 4). The payments to this creditor are current. The payments to this creditor shall continue pursuant to the terms of the original installment sale contract. **The claim in this class is not impaired.**

       3.7.   <u>Class G - MARGARETE DANNENBERG AND RUTH KAMENZ</u>: Class G consists of the secured claim of Margarete Dannenberg and Ruth Kamenz, in the respective amounts of $54,000 and $19,553.52 and which is secured by a vendor's interest in a land contract for property located at 5919 Shelter Bay Trail, Boulder Junction, Wisconsin. The allowed secured claims in this class shall be paid in full within one year of the Effective Date. The allowed claims shall continue to accrue interest at the rate of 6.00% until paid in full. Payments to these creditors shall be first applied to interest and then to principal. The Debtors shall make monthly payments to Margarete Dannenberg in the amount of $375.00 and monthly payments to Ruth Kamenz in the amount of $125.00. The Debtors shall sell the property located at 5919 Shelter Bay Trail, Boulder Junction, Wisconsin within one year of the plan confirmation, and the balance owed to these creditors as provided in this Plan shall be paid in full from the closing of the sale. **The claims in this class are impaired.**

       3.8.   <u>Class H - General Unsecured Claims.</u> Class H consists of all general unsecured claims against the Debtors. Holders of Class H claims shall be paid, a *pro rata* amount of $10,000.00 on the Effective Date of the plan from the equity the Debtors have in their closely held business (First Distribution). The Debtors shall sell the real property located at 5919 Shelter Bay Trail, Boulder Junction, Wisconsin within one year of the Effective Date. Within 30 days after the closing of the sale, all of the net proceeds of the sale shall be distributed pro-rata to creditors along with an additional payment of $5,000.00 that shall be provided by the Debtors from the equity in their exempt business (Second Distribution.) To the extent that the unsecured creditors vote in favor of the Plan, the Debtors shall pay a bonus payment of $5,000.00 to unsecured creditors from the exempt equity in their business in conjunction with the Second Distribution (Bonus Distribution.) The *pro rata* share of the claimed amount of any Disputed Claims that are subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account until a Final Order is entered. When Final Orders are entered disallowing or allowing and liquidating all Class H claims, the remaining funds in the bank account shall be distributed to the holders of all Class H claims *pro rata*. Payments on Class H claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address

notice with the Court. Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void. **The claims in this class are impaired.**

3.9     Class I - VILAS COUNTY TREASURER: Class I consists of the secured claim of The Vilas County Treasurer for real estate taxes owed on the properties in Vilas County. The Claims of this creditor shall be unaffected by this Plan. **The claim in this class is not impaired.**

## ARTICLE IV - EXECUTION OF PLAN

The Debtors shall fund the payments to unsecured creditors under this Plan using equity in exempt assets, the sale of property, and from income. The Debtors shall retain the Assets of the estate, and shall pay ordinary living expenses, operating expenses, and pay the secured creditors the amounts set forth in this Plan from their earnings. Consistent with the provisions of this Plan, and subject to any releases provided for herein, the Debtors reserve their right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtors may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtors or the estate shall not bar any claim by the Debtors against the holder of such claim.

## ARTICLE V - RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtors, the Debtors' operations and Assets for the following purposes until the Court enters an Order closing the case:

A.      To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtors to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtors' right to object to such claim in whole or in part;

B.      To hear and determine all adversary proceedings and contested matters;

C.      To allow and approve or disapprove any administrative expenses not previously allowed;

D.      To determine and resolve questions concerning the existence of defaults under the Plan;

E.      To modify the Plan pursuant to § 1127(b) of the Code;

F.      To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G. To issue any Order necessary to carry out the Plan.

## ARTICLE VI - EXECUTORY CONTRACTS AND LEASES

Any prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants) and not specifically rejected will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtors, their Estate, Assets, or properties. All Rejection Claims shall be General Unsecured Claims.

## ARTICLE VII - MODIFICATION OF PLAN

The Debtors may submit modifications to the Plan at any time before Confirmation pursuant to § 1127(a) of the Code, and thereafter in accordance with § 1127(b) or (e). After confirmation, the Plan may be modified pursuant to § 1127(e). The payments on the claims of Class D, E, and F creditors shall not be deemed payments under the Plan for purposes of § 1127(e).

## ARTICLE VIII - DISCHARGE AND CLOSING

A. Upon completion of all payments due to Class A, B, C, G, and H creditors, the Debtors shall be entitled to a discharge of all debts dischargeable under § 1141(d) of the Code, upon the filing of a affidavit evidencing that the required payments to these classes of creditors have been made. The payments on the Class A, D, E, F and I claims shall not be deemed payments under the Plan for purposes of §1141(d)(5)(A).

B. Upon the entry of the Discharge, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a Discharge, if one has not been previously entered.

## ARTICLE IX - MISCELLANEOUS

No creditor may take any collection action against Debtors or property of the estate or of the Debtors so long as Debtors are not in Material Default in performing their obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtors pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

Except as specifically provided in this Plan, upon the Effective Date of the Plan, the obligations to creditors as provided for in the confirmed Plan replace all obligations to creditors that existed prior to the Effective Date of the Plan. Debtors' obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-bankruptcy law.

Submitted this 21st day of January, 2014.

HANSON & PAYNE, LLC

　/s/ Dayten P. Hanson　
Dayten P. Hanson
Attorney for the Debtors
Wisconsin Bar # 1018968

740 N. James Lovell St.
Milwaukee, WI 53233
Phone: (414) 271-4550
Fax: (414) 271-7731
dph@hansonpayne.com